Michael R. Stein
Defendant - pro se
Prisoner No. 14600-006
Durand Hall
Federal Prison Camp - Yankton
P.O. Box 700
Yankton, South Dakota    57078

**RECEIVED**

MAY 2 4 2006

CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>Plaintiff )<br> )<br> )<br>vs. )<br> )<br>MICHAEL R. STEIN, )<br>Defendant, )<br>pro se ) | Case No.<br><br>J03-0001 CR (RRB) |

MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL

**INTRODUCTION**

Background

     This case attached to the Defendant with the the DEA supervised
delivery of a packaged computer terminal to the Defendant's
girlfriend's apartment on January 16, 2003. The terminal had been
previously seized by Canadian authorities when it was found to
contain cocaine. The packaged terminal was then sent to DEA
controlled agents in Juneau, Alaska without the seized cocaine
or the original packaging. After being prepared by insertion of
a bag of flour, a tamper alert transmitter, and marker powder
the controlled delivery events were initiated. The Defendant was

arrested outside his apartment following a warrantless forcible entry when the alert transmitter signalled the opening of the terminal.

This case also involves the admission at trial of drug paraphernalia seized from Defendant's mail eight months before the trial held May 19-20, 2003, in Juneau, Alaska.

## Summary

This motion contends that:

The Defendant was denied a fair trial due to use of false evidence.

The defense was denied timely revelation of material facts necessary to question government actions and impugn testimony.

The defense was denied opportunity to reply or argue orally in support of a previous motion for new trial.

The Ninth Circuit held in <u>Carriger v. Stewart</u>, 132 F.3d 463, 478 (9th Cir.1997) that:

The Court emphasized that in considering all the available evidence, the court is not bound by the rules of admissibility, but must consider "all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." (citations omitted)

## Jurisdiction

Fed.R.Crim.P. 33 provides jurisdictional base for a motion for a new trial-if motion is made: "grounded on newly discovered evidence ... within three years after the finding of guilt." The evidence must be in existance at time of trial. <u>U.S. v. Hall</u>, 324 F3d 720, 72**2** (D.C. 2003)

## Procedural History

The instant case was the result of a complex series of prior court filings docketted in three separate District of Alaska Courts, numbered chronologically; J03-0002 CR (JWS); J03-0004 CR (JKS); J03-0001 CR (RRB), and magistrate case numbers J03-003 MJ (PMP); J03-0001 MJ  (PMP).

(2)

The related cases were initiated through single count
indictments let in January, 2003, followed by superseding
indictments in April, 2003. The counts were joined and then
severed three days bfore trial. Several trial dates were set
and vacated as dismissals were entered.

The courts set a discovery deadline in only one of the
four indictments or the information.

The defense was informed, by sealed motion filed by the
government, on April 14, 2003, (docket #20, J03-0001) of intent
to seek superseding indictment and join the two counts. The
"first charge being the mailing non-mailable matter charged in
case 001 and count 2 being the attempted possession with intent
to deliver currently charged by Information in Count 1 of case
number J03-004." (Page 2 of the sealed motion incorporated by
reference.)

On May 15, 2003, this Court granted severance and the
defense was advised the 'attempt to possess ...' would be
tried May 19, 2003. The trial date assigned to the mailing
count.

On September 24, 2003, a motion for a new trial was filed.
Docket #68, J03-0001.

On October 2, 2003, Government's opposition to new trial
was filed. Docket #69

On October 9, 2003, defense counsel received the opposition.
It had been missent to discharged counsel.

On October 21, 2003, this Court denied the new trial motion
without reply or hearing. Docket #72

## The Motion Is A PRO SE Pleading

Pro se pleadings are to be construed liberally and held to
less stringent standard than formal pleadings drafted by lawyers.
If a court can reasonably read pleadings to state a valid claim
on which a litigant could prevail, it should do so despite failure
to cite proper legal authority, confusion of legal theories, poor
syntax and sentence construction, or litigant's unfamiliarity with

(3)

with pleading requirements. FN 1.

　　Pro se complaints and motions from prisoners are to be liberally construed. FN 2. (9th Cir.)


## NEWLY DISCOVERED EVIDENCE

Rule 33, Federal Rules of Criminal Procedure, five-part test

　　　　To prevail on a Rule 33 motion fo a new trial based on newly discovered evidence, a defendant must satisfy a five-part test:"(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative or merely impeaching; (5) the evidence must indicate that a new trial would probably result in acquittal." U.S. v. Harrington, 410 F.3d 598, 601 (9th Cir. 2005); U.S. v. Kulczyk, 931 F.2d 542, 548 (9th Cir. 1991)


### THE COCAINE ADMITTED AT TRIAL WAS NOT THE COCAINE SEIZED

　　On January 31, 2003, Canadian Constable Dion sent a one gram sample of contraband seized January 9, 2003 to a Canadian laboratory. Refer to trial record, TR 1-120

　　On March 14, 2003, defense counsel received supplemental discovery from the United States Attorney's Office directed to case number J03-0002 CR (JWS). The documentation produced by a Health Canada laboratory analyzed the January 9 seized contraband to contain a purity of **83% cocaine hydrochloride.** **See** Exh. A

　　On or about May 9, 2003, a fax transmittal from DEA case agent Ian McKenzie to Karen Loeffler, Assistant U.S. Attorney, contained a DEA Western Laboratory chemical analysis of the contraband admitted at trial. The exhibited evidence-in-chief

FN 1.—McCormick v. City of Chicago, 230 F.3d 319 (7th Cir. 2000)
　　　 Boag v. MacDougal, 454 US 364, 102SCt700, 70 L.Ed.2d 551 (1982)
　　　 Haines v. Kerner, 404 US 519, 92SCt594, 30 L.Ed. 2d 652 (1972)
FN 2.—U.S. v. Seesing, 234 F.3d 456 (9th Cir. 2000)

was found to contain a purity of **68% cocaine hydrochloride.**
**See** Exb. B, refer to trial record, TR 1-157

    "[a] prosecutor's presentation of tainted evidence is viewed
seriously and its effects are exceedingly carefully scrutinized."
<u>U.S. v. Polizzi</u>, 801 F.2d 1543, 1550 (9th Cir. 1986)

    (Movant finds no record that defense counsel received
this information prior to trial.)

**The False Cocaine Evidence Meets the Five Part Test**

    (1) The evidence was newly discovered and not available
at the time of trial.

    The **83%** purity documents were provided under a dismissed
case number, six weeks after the discovery deadline, and eight
weeks before trial. There was no discovery deadline ordered
in a subsequent case created by Information, in a separate court,
and the government provided no discovery. This case was dismissed
April 22, 2003.

    While this Information was pending the government filed
the superseding indictment creating this case. The Court set
no pretrial deadline for discovery and no record is found of
adherence to local rule protocols.

    Defendant submits it would be unreasonable to expect counsel
to recall the **83%** fact filed in a dismissed case file, not
part of original discovery, and not specifically transfered
to the instant case.

    Thus the locating of the **83%** purity documentation in a
dismissed case file qualifies it as newly discovered.

    (2) The defense exercised normal diligence specific to
the purity question in light of the convoluted process to trial
and the unexplained delay by the government in procuring the
evidence. Only extraordinary effort by an unassisted counsel
600 miles from his office would of resulted in the exposure
of the error.

    Defendant finds no record relating to the receipt by defense

counsel of the DEA laboratory analysis prior to trial. The Governments' "Answering Brief of the United States", on appeal from the conviction does indicate such discovery receipt exists. See FN 1.

Because drugs are fungible, the government was required to prove that the material seized ... by the police and thought to be illegal drugs was the same material analyzed by the chemist and found to be cocaine. See FN 2. Defendant submits the burden of due diligence fell on the government. While there is no basis to claim the willful use of false evidence there is, however, a cause for concern that somewhere along the custody chain there was a breakdown.

"To prevail on a claim that the government knowingly presented false testimony, defendant must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." U.S. v. Zuno-Arce, 339 F.3d 886, 887 (9th Cir.2003)

(3) The materiality attached to the cocaine evidence-in-chief is unquestionable.

The jury viewed numerous bag, baggies, boxes, signatures; heard chain of custody and expert chemical analysis testimony; and saw the actual twice repackaged substance. Without this display and testimony it would be reasonable that the outcome of the trial would have been different. Quite possibly there would have been no proceeding.

"Evidence is material" only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. U.S. v. Bagley, 473 US 667, 105 SCt 3375, 87 L.Ed.2d 481 (1985); cited in U.S. v. Zuno-Arce, 339 F.3d 886 (9th Cir. 2009)

FN 1. Page 41, note 3, "As Defendant does not appear to dispute the timely provision of all laboratory reports, the government has not moved to supplement the record with the discovery and corresponding discovery receipt. These can be provided if requested."

FN 2. See generally Thomas A Mauet, Fundamental of Trial Techniques 186-187 (1980) ("Where an object cannot be uniquely identified through the senses, a chain of custody must be established to demonstrate that it is the same object that was previously found").
Turney v. U.S., 626 A.2d 872 (D.C. App. 1993)

(4) The newly discovered **83%** purity evidence is not cumulative or merely impeaching, it goes to the core of the prosecution. The falsity of the admitted evidence is so powerful that it is reasonable that the exposure of the falsity to the jury would have resulted in mistrial or acquittal. The cocaine seized by the foreign country went to the very existence of the felony itself. "[f]alse evidence proffered against him related to his very guilt or innocence, thus rendering his trial fundamentally unfair in violation of his right to due process of law." Brown v. Borg, 951 F.2d 1011,1014, (9th Cir. 1991)

"[e]vidence may be so powerful, if it were to be believed by the trier of fact, it could render witness testimony totally incredible, and, in such case, if witness' testimony were uncorroborated and provided only evidence of essential element of government's case, impeachment evidence would be material and thus permit grant of new trial in interests of justice." U.S. v. Davis, 960 F2d 820 (9th Cir.!992)

(5) The prejudice to the defense created by the admitting of false evidence of this importance is reasonably unquestionable.

Courts are unanimous, however, in concluding that if the government solicits testimony that it knew or should have known was false, or permits unsolicited false testimony to go uncorrected, the prejudice standard is significantly relaxed. A new trial will be granted if there is any reasonable likelihood that the false testimony could have affected the judgement of the jury.
FRCrP 33 motions are frequently based on the government's nondisclosure of information to the defense under Brady v. Maryland, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1983)

From the United States Supreme Court Digest, 2005, Mathew Bender and Company, Inc. Commentary by Steven M. Statsinger, Federal Rules of Criminal Procedure, Rule 33.

A new trial is required "if there is any reasonable likelihood that the false (evidence) could have affected the judgement of the jury." U.S. v. Polizzi, 801 F.2d 1543, 1550 (9th Cir. 1986)

(7)

**THE DEFENSE WAS DENIED TIMELY AND COMPLETE DISCOVERY**

The Defendant has ascertained that the government failed to make timely disclosure of all evidence or information that tends to negate the guilt of the accused or mitigates the offense. **See FN 1.**

Defendant's have a due process right to timely disclosure of exculpatory evidence (Brady) or evidence that would impeach the government's witnesses, including inconsistent statements by the witness, (Giglio). The right is independent of Rule 16 and may result in reversal if the defense can demonstrate that there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding. Strickler v. Greene, 527 US 263, 144 L.Ed.2d 286, 119 S Ct 1936 (1999)

> FRCrP 33 motions are frequently based on the government's nondisclosure of information favorable to the defense under *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963) and its progeny. In *United States v. Bagley*, 473 U.S. 667, 87 L.E.2d 481, 105 S.Ct. 3375 (1985), the United States Supreme Court announced a single prejudice standard covering all such cases, regardless of whether the exculpatory materials were specifically requested by the defense, responsive to a general defense request, or not requested by the defense at all. There must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 87 L.E.2d 494, 105 S.Ct. at 3383. The Court recognized that a more serious impairment to the adversary process occurs when the government withholds material responsive to a specific defense request, and thereby misleads the defense, but concluded that the standard was flexible enough to account for it, because "the reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case." Id.
>
> FRCrP 33 motions can be also based on newly discovered evidence that goes to an issue other than the defendant's guilt. For example, a motion could be based on new evidence affecting the court's resolution of a dispositive suppression or other pretrial motion. If the motion is based on one of these claims, the prejudice prong is satisfied by showing a reasonable probability that the outcome of the pretrial litigation would have been different if the newly discovered evidence had been considered.

"COMMENTARY" by Steven M Statsinger. Esq.-Notre Dame Law School Federal Rules of Criminal Procedure, Rule 33

FN 1. The American Bar Association, Model Rules of Professional Conduct (2002 ed) 'Rule 3.8 Special Responsibilities of a Prosecutor' states; The prosecutor in a criminal case shall: (d) make a timely disclosure to the defense all evidence or information that tends to negate the guilt of the accused or mitigates the offense,'

## THE GOVERNMENT FAILED TO COMPLY WITH "BRADY"

The government violates the Due Process Clause when it fails to disclose material favorable evidence. Brady v Maryland, 373 US 83, 83 S Ct 1194, 10 L.Ed.2d 215 (1963). The Brady rule applies to both exculpatory and impeachment evidence. United States v Bagley, 473 US 667, 676, 105 S Ct 3375, 87 L.Ed.2d 481 (1985). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682, 105 S Ct 3375; see also Kyles v Whitely, 514 US 419, 433-34, 115 S Ct 1555, 131 L.Ed.2d 490 (1995). Thus, the Supreme Court has explained that "[t]here are three components of a true Brady violation: The evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [Government], either willfully or inadvertently; and prejudice must have ensued." Strickler v Greene, 527 US 263, 119 S Ct 1936 (1999). We must determine whether the evidence was material based on the cumulative impact of all the evidence the government suppressed. Kyles, 514 US at 436-38, 115 S Ct 1555. from U.S. v. Ciccone, 219 F.3d 1078, 1085 (9th Cir.2000)

"The prosecution has an affirmative duty to turn over to the defense all evidence favorable to the accused including impeachment evidence." "The prosecutor's failure to disclose favorable evidence violates due process when evidence is material." Belmontes v. Woodford, 350 F.3d 861, 862 (9th Cir. 2003)

## The Government Withheld the Fact That a Postal Receipt Had Been Copied Without the Knowledge and Consent of the Defendant.

Trial testimony surprised the defense when it was revealed that the admitted paraphernalia removed from Defendant's mail was precipitated by the unknown seizure-by-copying of a postal receipt located during a consensual search for drugs only. TR 1-69,70

"A search that differs in material respects from the search initially approved cannot be sustained ...." U.S. v. $124,570, 873 F.3d 1240 (9th Cir. 1989)

The evidence supporting the search was authorized for drugs only exits in the search warrant affidavit and case presentation letter pertaining to the dismissed charge of mailing a firearm. There was a suppression hearing held regarding the paraphernalia which concluded in denial by this Court.

The Defendant submits this newly discovered material fact could reasonably have affected this Court's opinion if the

defense presented this violation of the right to be secure in
ones' private papers at the hearing. Note; the witness was not
revealed at the hearing.

The Defendant was prejudiced at trial by the seven exhibits
and five government witnesses  presented to the jury.

There is a reasonable probability that the exclusion of the
paraphernalia evidence would have resulted in a different verdict.


**The Government Withheld Seized Documents**

The Defendant submits the government withheld documents
seized from the apartment to which the controlled delivery was
directed. These papers would support the contention that the
legal address  and secondary address do not coincide with the
fictitious address on the delivered package. This fact would
support the argument that the package was not on a sure and
direct course to the Defendant without direct interference from
the government.

The withheld indicia of ownership are revealed in the
January 17, 2003, complaint filed by DEA Agent McKenzie.
"Subsequent to the execution of the search warrant at Apt 3
Auke Bay Harbor Road ...." "Documents and papers seized from
the apartment indicated that ARMSTRONG was the primary resident."
(Subscribed and sworn before Phillip M. Pallenberg (PMP)
Magistrate Judge, on the 17 day of January 2003 at Juneau, Alaska)

The Defendant locates no such evidence and further submits
it will reveal the fact that Defendant had no knowledge of the
address on the package, contrary to trial testimony. TR 2-90

The address facts contained in these withheld documents
deprived the defense of material evidence to impugn testimony
and initiate pretrial motions.

The address designated by these withheld lease and rental
notices will be 11509 Glacier Highway, not the fictitious 11521
Auke Bay Harbor Road written on the delivered package. This 11521

address was not found by internet searches which are newly available for Juneau, Alaska. Combined with an untimely agent's report, ARMSTRONG'S phone list, and withheld car registration information, and addresses of structures on the common roadway-these documents confirm the 11521 address does not attach to the delivery point.

The knowing use by government agents of misstatements of fact regarding the address relates to validity of several occurrences. Specifically the at trial testimony of several governemt witnesses would be impugned thus calling their entire testimony into question.

**The Prosecution Denied Defense Counsel Access To Officer Reports When They Were Sent To Anchorage When He Was In Juneau Preparing For Trial.**

The reports and notes were sent under cover (see Exh E1,E2) when defense counsel was attending the pretrial conference on May 15, 2003 and preparing for trial.

Specifically, the reports contain material facts about the package delivery times, the presence of defendant at the delivery point, the identification of the defendant, the delivery address validity, the time frame available for agents to seek a warrant before forcible entry and the execution of the search warrant beyond times allowed by the warrant and Fed.R.Cr.P 41. Had the defense been aware of these facts to impugn government witness testimony the jury might have assigned less credibility to the testimony.

**The Government Withheld the Ultraviolet Marker Powder Results**

At trial the results of the testing of the Defendant for residue from the marker powder installed in the delivered package were revealed as negative. Had the jury been shown the clear tape hand impressions made by the transporting Juneau Police Officer there is a reasonable possibility that a degree of doubt could have been created and reinforced the defenses tactic of arguing for a not guilty verdict based on 'reasonable doubt'.

The lack of any fingerprint evidence was also revealed for the first time at trial.

The defense would not reasonably initiate inquiry into the existence of such evidence as it might be inculpatory. But the government withheld the existence of these exculpatory facts and again violated Brady.

"Accordingly, when exculpatory evidence is withheld, attention focuses on the effect on the defendant's right to due process, the prosecutor's intentions are irrelevant." Thomas v. Cardwell, 626 F.2d 1375, 1382 n.24 (9th Cir. 1980)

## Additional Discovery Violations

The Defendant has located an 'Investigative Summary' of the events attached to the paraphernalia seized from Defendant's Priority Mail° created by Postal Inspector Zielinski. It is incomplete and refers to another case number for which there is no discovery located in defense files. Several critical pieces of information are missing from the record. There is no indication the Defendant ever received any copy of the warrant or inventory of seized items in a timely manner. There is no reference to the fact that the seized parcels were delivered to the Defendant six and nine weeks later.

The withheld investigative reports deprived the defense of timely facts necessary to impeach trial testimony and support pretrial motions.

The Defendant has located a single page of the delivery record, 'Carriage Record', filled out by the employee of the private courier employed by law enforcement to perform the controlled delivery. It indicates that the address does not match the package or warrant addres, delivery times are out of sequence, delivery addresses are not congruous, two persons signed for the

subject package, and related pages are missing. An opportunity to examine the missing pages and the delivery person would support the argument that the package was undeliverable as addressed.

Finally, the Defendant locates only six officer reports or statements of the over twenty agents involved from ten law enforcement agencies. It is reasonable to contend there are several sets of notes, reports, or statements in existence which should be available for defense review. These statements, made immediately after the activating events would permit the defense to meaningfully cross examine witnesses and formulate an alternative defense strategy.

> "Because the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned. (Kyles) The disclosure obligation exists after all, not to police the good faith of prosecutors, but to insure the accuracy and fairness of trials by requiring the adversarial testing of all available evidence bearing on guilt or innocence." Carriger v. Stewart, 132 F.3d 463, 480 (9th Cir. 1997); citing Kyles v. Whitely, 514 U.S. 419,438-442, 115 S.Ct.1555, 1568-69, 131 L.Ed2d 490 (1995)

The discovery errors also lead to a constitutional claim that "[t]he withholding of evidence, denied him the full panoply of protection afforded criminal defendants by the constitution." Schulp v Delo, 513 U.S. 298, 314, 115 S.Ct. 851, 860, 130 L.Ed. 808 (1995)

> "[t]he question is whether or not the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." U.S. v. Ogles, 406 F.3d 586, 591 (9th Cir. 2005); United States v. Antonakeas, 255 F.3d 714,725 (9th Cir.2001) from Kyles v. Whitely, 514 U.S. 419, 433-34

**The Court Erred In Finding the Newly Discovered Magistrate's Order Authorized The Use Of A Surreptitious Alerting Device.**

The Defendant, through counsel, had previously filed a motion for new trial based on newly discovered evidence. The motion raised issue with regard to the court order and United States Attorney's affidavit presented to the defense at the close of the testimony phase of the trial, May 20, 2003. See Exh C

"The government does recall that defense counsel, at trial, requested a copy of the actual beeper order." Incorporated by reference to the 'The Government's Opposition to Motion for New Trial ...', filed October 2, 2003.

The defense was denied opportunity to submit a timely reply to the government's opposition because the copy was missent to discharged counsel.  See Exh D.

This Court denied the motion without hearing and held: "[t]hat the implant device [beeper] was used for both tracking and alerting agent's when the package was opened did not go beyond the scope of the search warrant and would not have prevented evidence seized thereafter from being admitted at trial."

The Defendant locates no search warrant authorizing the use of the implant device for surveillance within an area covered by the Fourth Amendment's expectation of privacy precedents.

        United States v. Karo, 468 US 705, 82 L.Ed.2d 530,
        104 S Ct 3296 (1984)
        at 712-13; holding that placement of beeper does not
        violate Fourth Amendment unless reasonable expectation of
        privacy exists.
        at 714-18, a warrant was required to monitor the location
        of a tracking device in a private home because of the
        legitimate expectation of privacy within a home.
        at 707, the warrantless monitoring of an electronic tracking
        device ...[does] not violate the Fourth Amendment when it
        reveal[s] no information that could not have been gained
        through visual surveillance.

**The Court Order Authorized The Three Day Monitor Of A Tracking Device Pursuant To Title 18 USC 3117(a). Exh C1**

The Magistrate's order was issued pursuant to Title 18 U.S.C. §3117(a), which authorizes the use of a mobil tracking device. Defined "As used in this section, the term 'Tracking Device' means an electronic or mechanical device which permits the tracking of movement of a person or object." 18§3117(b)

**The Order Did Not Authorize  The Use Of Sense Enhancing Technology To Gain Information Regarding The Interior of A Private Residence.**

"Held: Where, as here, the Government uses a device that is not in general public use, to explore details of a private home that would previously have been unknowable without physical intrusion, the surveillance is a Fourth Amendment "search" and is presumptively unreasonable without a warrant."
Kyllo v Unites States, (2001) 533 US 27, 150 L.Ed.2d 94, 98, 121 S Ct 2038

Defendant submits the federal magistrates order did not meet the requirements of a search warrant both technically and legally. The United States Attorney's affidavit filed (Exh C2) January 16, 2004, under seal, exactly one year after use does not indicate where or what time application was made. The application contains a case number for which no docket existed for one year, contains no address number or description particular to the controlled delivery, references a single anonymous letter as probable cause, and contains numerous missing necessities for a bona fide warrant. Curiously, it is endorsed by the DEA case agent who then proceeds to a State of Alaska Judge to obtain a contingent (anticipatory) warrant, triggered by delivery of the package. The state judge is not informed of the order and does not include the device in the warrant.

Justices Stevens, joined by Chief Justice Rehnquist, and Justices O'Conner and Kennedy, dissenting ...; (2) the Supreme Court should not erect a constitutional impediment to the use of sense-enhancing technology unless such technology provides the user with the functional equivalent of actual presence in the area being searched, .... Kyllo, 150 L.Ed2d at 95 (2001)

(15)

**OPENING DISCUSSION**

The Defendant requests the Court vacate the conviction and grant a new trial, OR, in the alternative hold a hearing allowing the defense leave to seek discovery and solicit testimony.

[i]n determining whether a hearing must be held, the court must consider the context of the allegation, the seriousness of the alleged misconduct, or bias, and the credibility of the source. U.S. v. Jackson, 209 F.3d 1103, 1109 (9th Cir. 2000); U.S. v. Augulo, 4 F.3d 843, 847 (9th Cir. 1993)

A hearing should be held if the allegations in the motion raise factual questions outside the record, and are supplemented by adequate supporting materials such as affidavits which "disclose the source of information or verify the details" upon which the motion is based. Payne v. United States, 516 A.2d 484, 501 (D.C. 1986)

It is more likely than not that any reasonable juror – who learns that evidence was false, testimony was not credible, and not shown illegally seized evidence – would not find a defendant guilty beyond any reasonable doubt.

"A petitioner [defendant] need not show that he is "actually innocent" of the crime he was convicted of committing; instead, he must show that "a court cannot have confidence in the outcome ot the trial." Majoy v. Roe, 296 F.3d 770, 777 (9th Cir. 2002); Carriger v. Stewart, 132 F.3d 463, 478 (9th Cir. 1997); citing Schulp v Delo, 513 US 298, 316, 115 S Ct 851, 130 L.Ed.2d 808 (1994)

The Defendant cannot claim that the falsified cocaine evidence was knowingly offered to influence the jury but offers the following;

> "However, a government's assurances that false evidence was presented in good faith are little comfort to a criminal defendant wrongly convicted on the basis of such evidence. A conviction based on false evidence, even evidence presented in good faith, hardly comports with fundamental fairness. Thus, even if the government unwittingly presents false evidence, a defendant is entitled to a new trial "if there is a reasonable probability that [without the evidence] the result of the proceeding would have been different." U.S. v. Young, 17 F.3d 1201, 1204 (9th Cir. 1994)

**IN REVIEW**

The defense was encumbered by the Government's suppression of material evidence:

- The copying of the postal receipt and the missing/incomplete investigative reports.
- The indicia of address seized.
- The hand imprints tested for the detection/marker powder.
- The private courier and his complete delivery record.
- The officer reports.

"The suppression by the government of material favorable evidence violates due process and requires that the tainted conviction be vacated." <u>U.S. v Sarno</u>, 73 F.3d 1470 (9th Cir. 1995)

The defense suffered prejudicial surprise at trial by the revealation:

- The 'implant device' (beeper) was not authorized for the violation of Fourth Amendment guaranteed privacy.
- The postal receipt had been copied violating Fourth Amendment guarantee of ones' being secure in his private papers.

The defense was impeded by the unavailability;
- of the cocaine and its analysis information.
- of the officer reports sent to Anchorage when counsel was in Juneau.
- of the delivery person whose statements were admitted at trial without the Sixth Amendment right to confrontation.
- of the Government's opposition to the previously filed new trial motion denying the timely reply to the legality of the order for a tracking device used as an intrusion alert.

**CLOSING DISCUSSION**

The Movant submits that a large percentage of the prosecutions evidence would have not reached the jury if the defense possessed the aforementioned facts and the result of the trial would be favorable to the accused.

**IN THE ABSTRACT**

Movant also relied upon the essence of the following.

"[f]alse evidence proferred against him related to his very
guilt or innocence, thus rendering his trial fundamentally
unfair in violation of his right to due process of law."
Brown v. Borg, 951 F.2d 1011, 1014 (9th Cir. 1991)

"Upon discovery of previous [misstatements] by Government's
witness, the court should decide whether the jury would have
altered its verdict if it had had the opportunity to appraise
the impact of the newly discovered evidence, not only upon
factual elements of the Government's case but also upon the
credibility of the Government's witness[es].
U.S. v. Krasny, 607 F.2d 840 (9th Cir. 1979)

In evaluating whether newly discovered evidence requires a
new trial, the Court sits as a thirteenth juror to determine
whether a fair trial requires that the [claim presented in the
motion for new trial] be made available to the jury.
Geddie v. United States, 663 A.2d 531, 533 (D.C. 1995)

"If the court concludes that, despite the abstract sufficiency of the
evidence to sustain the verdict, the evidence preponderates sufficiently
heavily against the verdict that a serious miscarriage of justice may have
occurred, it may set aside the verdict, grant a new trial, and submit the
issues for determination by another jury." United States v. Lincoln, 630 F.2d
1313, 1319 (8th Cir.1980) cited by U.S. v. Kellington, 217 F.3d 1084, 1097
(9th Cir. 2000)

A district court may exercise its supervisory powers to dismiss an
(indictment) to remedy the violation of recognized rights to deter illegal
conduct and "to preserve judicial integrity by ensuring that a conviction
rests on appropriate considerations validly before the jury."
U.S. v. Garza-Juarez, 992 F.2d 896, 905 (9th Cir.1993) quoting United States
v. Hastings, 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)

**CONCLUSION**

    Based on the foregoing cumulative errors representing a denial of substantive due process, the Defendant seeks relief under Rule 33 of the Federal Rules of Criminal Procedure and respectfully moves this Honorable Court grant him a new trial.

Dated this 19 day of May, 2006

                          Respectfully submitted,

                         *Michael A. Stein*
                         Michael R. Stein, **pro se**
                         Prisoner No. 14600-006
                         Durand Hall-Yankton FPC
                         P.O. Box 700
                         Yankton, South Dakota   57078

(Please note all correspondence must be endorsed with;
 "Special Mail-open in the presence of the inmate")

                  **CERTIFICATE OF SERVICE**

    I hereby certify that on this _19_ day of May, 2006, a true and correct copy of the forgoing motion for new trial with attachments was placed in the inmate outgoing mail receptacle to be sent via first class postage, prepaid, to:

Karen L. Loeffler, AUSA
U.S. Attorney's Office
222 West 7th Avenue  #9
Anchorage, Alaska   99513

                    *Michael R. Stein*
                    Michael R. Stein, **pro se**