DEBORAH SMITH
Acting United States Attorney

KAREN L. LOEFFLER
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Ave., Room C-252
Anchorage, Alaska 99513
Phone (907) 271-5071
Fax (907) 271-1500
email: karen.loeffler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 1:03-cr-0001-RRB |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S** |
| | ) | **OPPOSITION TO SECOND** |
| v. | ) | **MOTION FOR NEW** |
| | ) | **TRIAL** |
| MICHAEL R. STEIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

COMES NOW the United States, by and through counsel, and opposes defendant Michael Stein's second motion for new trial based on alleged newly discovered evidence. As set forth below, defendant's latest motion fails in that it contains no "newly discovered" evidence, in general, simply repeats previous unsupported allegations and presents nothing that would lead to any likelihood of acquittal in light of the overwhelming evidence presented at trial.

I.  BACKGROUND

   A.  Summary of the Facts

The case against Mr. Stein arose out of two investigations involving the mailing of packages to Juneau, Alaska. The first set of packages were intercepted on October 28, 2002 and did not result in any charges filed at that time. The second investigation of matters connected to Mr. Stein began on January 9, 2003, when customs inspectors at Vancouver International Airport in Vancouver, Canada intercepted a package addressed to "Carey Hellen, #3-11521 Aukea Bay Harbour Rd." in Juneau, Alaska. Upon opening the package, Customs Inspector Arthur Nause found it to contain approximately 500 grams of cocaine packed within an electrostatic bag that had been placed inside the side panel of a computer tower ("CPU unit") that was contained within the box. TR 1-99-112. Based on this discovery, Canadian law enforcement officers contacted the United States Drug Enforcement Administration (DEA).

Special Agent Ian McKenzie, assigned to the DEA in Alaska, then arranged for a controlled delivery of the package to the stated address in Juneau, Alaska. TR 1-165-67. Before setting up the controlled delivery, Special Agent McKenzie, and law enforcement officers associated with the DEA Task Force, placed a package of substitute or fake cocaine in an electrostatic bag in order to simulate the

cocaine previously taken out of the package by Canadian customs authorities. Special Agent Ian McKenzie also applied for and received a court order to place a beeper device under the package within the CPU tower. ER 11-16.

 Officers then made a controlled delivery to the stated address on the package, the apartment of Karey Armstrong, where a male, later determined to be Mr. Stein, signed for the package, placed it in a car and then drove it to his residence at 2525 Industrial Boulevard in Juneau, Alaska. E.g., TR 1-176-185; 2-103-9. After the alerting device went off in Mr. Stein's residence, officers entered the residence, arrested Mr. Stein, secured the residence and obtained a search warrant. TR 1-181-194; 2-109-114. Pursuant to that search warrant, officers discovered the packaging, CPU tower, and substitute cocaine. TR 2-140-141. In addition, they found that Mr. Stein had a video surveillance camera operating at his entrance at the time of his arrival with the package. Review of the recording clearly showed Mr. Stein as the individual carrying the package containing the sham cocaine up the steps of his residence.

 After a variety of pretrial issues, Mr. Stein was ultimately charged with attempted possession with intent to deliver 500 grams or more of cocaine as well as illegal mailing of a firearm. The latter charge arose out of the interception of the packages in October. The second count was severed for trial, and Mr. Stein

proceeded to trial on the first charge on May 21, 2003. He was convicted the next day and later sentenced to 65 months imprisonment.

  B. The Post Trial Proceedings

On June 16, 2003, defendant filed a pro se motion for judgment of acquittal, for the most part alleging ineffective assistance of counsel but also claiming discovery violations, failure to produce exculpatory evidence and other alleged errors. The district court denied defendant's motion as untimely. Dkt. 58. Trial counsel then withdrew and defendant, represented by new counsel, filed a motion for new trial on September 23, 2003, this time alleging newly discovered evidence that there was a defect in the district court's order permitting the installation of a beeper device because the order described the address listed on the package which was not the official business address of Ms. Armstrong's residence. ER 200-201. Defendant further claimed that the alerting device was illegally used as a tracking device and therefore its use violated the scope of the order permitting its use. The district court denied this motion as untimely and on the merits. The court further noted that the "newly discovered" evidence alleged was, "not material to the case and would not likely have resulted in an acquittal. Dkt. 72.

On appeal defendant, represented by his third new counsel, challenged the search of his residence in January 2003, and the October search of the mailed

packages. He further argued that the government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) alleging, what the Ninth Circuit described as "an asthenic and rather lutulent" argument, related to the government's handling of evidence about the quantity of cocaine.  The Ninth Circuit, in an unpublished opinion, found no error and affirmed his conviction and sentence.  Id 124 Fed. Appx.571 (9th Cir. 2005).

II.     THE INSTANT MOTION

Defendant now files his second motion requesting a new trial based on alleged newly discovered evidence pursuant to Fed.R.Crim.P. 33(b)(1).  In his latest motion defendant claims that he has "newly discovered" that the cocaine introduced in his trial was not the same cocaine that was intercepted in Canada.  In support of this claim he relies on a comparison of the Canadian lab report, provided in pretrial discovery, to the lab report from the DEA lab, also provided in pretrial discovery.  In addition, defendant reiterates various of his previous complaints about alleged discovery violations, late discovery and the failure to grant his previous new trial motion.  Defendant's latest motion should be denied as he simply presents nothing new.  His newly discovered evidence is apparently based on his personal review of the documents, file and discovery previously provided.  His arguments involve nothing more than an attempt to rehash claims

previously made or further allegations of discovery and *Brady* violations belied by the very documents on which he relies.

III.   ARGUMENT

  A.   New Trial Standards

"Although defendants are tireless in seeking new trials on the ground of newly discovered evidence, motions on this ground are not favored and are viewed with great caution." Wright, Federal Practice and Procedure: Criminal 2d §557 (West 1982). In order to make out a motion for new trial based on newly discovered evidence, the defendant bears the burden of showing that: (1) the evidence was newly discovered; (2) the failure to discover the evidence sooner was not the result of lack of diligence; (3) the evidence is material to the issues at trial; (4) the evidence will be neither cumulative nor impeaching; and (5) the evidence indicates that a new trial will probably result in acquittal. *United States v. Sarno,* 73 F.3d 1470, 1507 (9th Cir. 1995). In order for alleged new evidence to justify a new trial, it must, of course, be admissible. *Kamel,* 965 F. 2d at 491. "A Rule 33 motion based on 'newly discovered evidence' is limited to where the newly discovered evidence relates to the elements of the crime charged." *United States v. Mett*, 65 F.3d. 1531,1533 (9th Cir. 1995); *United States v. Hanoum*, 33 F.3d 11128, 1130 (9thCir. 1994) (newly discovered evidence of ineffective assistance of

counsel does not excuse failure to file motion within 7 day limit).  For this reason, for example, newly discovered evidence that is merely cumulative or impeaching cannot form the basis for a new trial.  *See United States v. Krasny,* 607 F.2d 840, 843 (9th Cir. 1979).  The trial judge has broad discretion to decide that new evidence is not sufficiently credible to support a motion for new trial.  *United States v. Diggs,* 649 F.2d 731, 740 (9th Cir. 1981).

      B.    Defendant's "Evidence" is not Newly Discovered

          1.    The lab reports

Defendant contends that he has "newly discovered" that the cocaine described in the trial was not the same cocaine seized in Canada.  He evidence on which he bases this allegation is the two lab reports **previously provided** in discovery.  Obviously, further perusal of documents provided in discovery to provide a new theory to attack the evidence does not constitute "newly discovered" evidence that could not have been discovered before trial.  This alone dooms Stein's first claim.

Nor does his claim resonate on the merits.  The purity of the cocaine seized is in no way relevant to the charges. 21 U.S.C. §846 and the applicable penalty provision, §841(B)(1)(B)(ii), refer to 500 grams or more of a "mixture or substance" containing cocaine.  As a practical matter, one can imagine that if

cocaine is mixed with a cutting agent the purity of one sample may very well not match the purity of a different sample taken from a different location in the package.  The trial evidence, of course, established the chain of custody, thus verifying that what was introduced and examined was, indeed, the same package.  Moreover, the fact that the defendant took the package and immediately opened not only the package, but also the computer tower, took out the package of sham cocaine and secreted it in a wall, clearly established his knowledge that the substance he was attempting to import was narcotics – the relevant element of the crime.

Stein did not stipulate to anything in this trial.  Special Agent McKenzie testified that after Canadian authorities seized the package they forwarded the packaging material to the DEA for a controlled delivery.  For trial the government was faced with calling someone from the Canadian lab or having the cocaine retested by the DEA lab in San Francisco in order to have a DEA witness testify..  The government did the latter, and the DEA lab report was discovered and the DEA chemist testified.  Moreover, defendant already raised issues about the cocaine in his appeal.  His argument there, summarily rejected by the court, was that the government somehow violated its *Brady* obligations by failing to provide the cocaine for retesting prior to trial.  Thus, Stein's first claim fails on numerous

grounds; his evidence is not newly discovered; it does not relate to the elements of the crime; and it does not suggest that if it were introduced it would have contributed, in any way, to an increased likelihood of acquittal. Defendant's other claims suffer from similar deficiencies.

    2.    The postal receipt

This claim is somewhat hard to discern. It appears to be a second attack on the search warrant obtained to open the packages mailed in October from which drug paraphernalia was seized. Again this "evidence" for what it matters, certainly is not newly discovered. Defendant himself claims it was evidence he learned of in trial. In addition, there was a full evidentiary hearing related to the October seizure in which all avenues of the stop, seizure and search of the packages was explored. Further, at best the defendant appears to be claiming a privacy interest in a postal receipt kept by the post office? The government simply is unable to discern how this latest claim would even impact the earlier decisions denying suppression of the evidence found in the October packages. Defendant challenged the denial of the suppression motion on appeal, which challenge was rejected. A new attempt to challenge that search based is neither newly discovered, nor does it relate to the elements of the crime. Moreover, defendant clearly had access to all documents seized well before trial. There was no discovery violation.

### 3. Karey Armstrong's Address

Defendant's third claim seems to be a restatement of his previous fixation on the fact that the address on the package sent in January described the physical address of his girlfriend – Ms. Armstrong – but was not the official address of her residence. In his previous motion for new trial he claimed that this invalidated the beeper order. This time he claims that the affidavit in support of the application for a search warrant of Ms. Armstrong's residence was false because documents in the house did not actually cite the exact address listed on the package. All of this, of course, is irrelevant to any important fact. There was no dispute that the package was meant to be delivered to Ms. Armstrong's address. She testified and she signed for it. There was no dispute that Mr. Stein knew where her residence was. He was her boyfriend; he lived there on and off; and his things were found all over the apartment and in the safe. There was further no dispute that the address listed on the package contained misspellings and did not reflect the appropriate postal address for the residence. The defendant made that argument at trial. As the jury found during trial and this court noted afterwards, the point was irrelevant to any material issue.

### 4. Jencks material

Defendant's fourth claim relates to the timing of Jencks Act statements

provided to the defense **before trial.** Since the statement were used to cross examine the witnesses, there clearly was no discovery violation. The Jencks Act itself does not require that witness statements be provided until after a witness testifies. The statements were produced well before that. Again, there was no discovery violation. Similarly, defendant's conclusory allegation that he never got them because his counsel was in Juneau when they were sent to his office, fails to implicate Rule 33. His exhibits simply show that the government provided the statements to counsel's office. Obviously, if defendant's experienced counsel never got police reports from testifying officers he would have asked for them and been provided with them. There is no basis for defendant's claim that his attorney never got the statements. Nor does he explain what was in them that would have created a likelihood of acquittal.

        5.        The theft detection powder

Defendant's fifth claim again relies on trial evidence. At trial, defendant called Special Agent McKenzie as a defense witness to testify that the agents put theft detection powder in the package and that they did not detect it on the defendant's hands. Since the defendant called the witness to establish this point, he clearly has not newly discovered the fact that this happened. Indeed, since defendant himself was the person whose hands the officers tested for the powder

he cannot claim that he exercised due diligence in failing to discover this fact for 3 years. Finally, as Special Agent McKenzie explained, the officers put the theft detection powder inside the sham cocaine package. When they recovered the package from the wall in which Stein had attempted to hide it, it had not been opened so no powder would have been transferred to him.

      6.    Other allegations

Defendant finally makes a series of catch all allegations of further discovery violations – all again unsupported by any proof. Ironically, what he appears to have done is reviewed the actual discovery then speculated based on that discovery that there must be something more and that something more would be the magic document that would exonerate him. For example he claims that he does not have evidence that he got the warrant used to support the search of the October packages. However, that very warrant was the subject of both pretrial and post trial litigation. He further speculates error because he cannot find a document showing that the seized packages were delivered some weeks after they were seized. In fact, Inspector Zielinski testified that he could not reach defendant and Ms. Armstrong further testified as to why.

Speculation is insufficient to justify a motion for new trial based on newly discovered evidence. There were no secrets in this case; nothing was withheld from

anyone.  The evidence was overwhelming.  It involved a video of the defendant himself carrying the package up the step of his residence, opening the computer tower to remove the package, then peeking out at the officers after they knocked and announce, and hiding the package of sham cocaine in the wall of the building as the officers entered to arrest him.

IV.   CONCLUSION

For all of the above reasons the government respectfully requests that this court deny defendant's second motion for new trial based on newly discovered evidence.

RESPECTFULLY SUBMITTED this 8th day of June, 2006 at Anchorage, Alaska

DEBORAH SMITH
Acting United States Attorney

s/ Karen Loeffler
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Ave., Room C-252
Anchorage, Alaska 99513
Phone (907) 271-5071
Fax (907) 271-1500
email: karen.loeffler@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on June 8, 2006,
a copy of the foregoing was mailed to:
Michael Stein
Durand Hall
Federal Prison Camp - Yankton
PO Box 700
Yankton, South Dakota 57078

s/ Karen Loeffler

U.S. v. Michael Stein
No. 1:03-cr-0001-RRB                              13